Welcome to day two of the sitting of this particular panel. We have three cases this morning. We'll hear the first two and probably take a recess, brief recess before hearing the third. The main thing I'll bring to your attention, though probably unnecessary for most if not all of you, is our lighting system. Be aware of it and when the red light comes on, finish your sentence. But that needs to be the end of your argument unless we give you permission to proceed further. Our first case of the day is United States v. Francisco Villagomez. Mr. Bates. Good morning, your honors. May it please the court. There is no dispute that Mr. Villagomez committed the instant offense on November 11th, 2016. There's no dispute that Mr. Villagomez was later convicted in state court of evading arrest on April 27th, 2017. Thus, there's no serious dispute that the district court plainly erred in applying a guidelines provision that required, excuse me, the instant offense to have been committed subsequent to sustaining that evading arrest conviction. The only real dispute here is whether this court is powerless to correct that error. It's hands tied by the Lopez rule that questions of fact can never rise to the level of plain error. Well, this isn't a question of fact, is it? We have the date. No, your honor. That's exactly right. Lopez does not. Misapplication of the guidelines. That is precisely correct, your honor. That's the way I see it. Outstanding. He's one of three. I'm wondering about the other two. Well, Judge Barksdale has the matter exactly correct, your honor. All two of them. All the other two judges said they agree. Won't you give us the flavor of your argument on this? I will, and I'll keep it short, your honor. Lopez doesn't bar the consideration of this plain error here for, because as you see from the timeline of events that I've provided, and I toss that out there, everyone in my mood is confused by the timeline, so I hope this is helpful to the court. There's no question of fact here. There's no dispute as to the dates. There's no dispute as to the order of the dates. The question is whether on those undisputed facts as stated in the PSR and adopted by the district court below, whether there is a valid predicate for applying guideline section 2K2.1A4A. That's a question of law, as Judge Barksdale just told us. It's an application of law to fact specifically, and there are three sets of authorities that demonstrate that to be the case. In ascending order specificity, you've got cases like Ornelas, Pullman Standard, and this court's decision in Trinity Industries that tell us when you have undisputed facts, and the question is whether they satisfy the legal standard, that is an application of law to fact. It's something that's reviewed de novo. You've got a second? Why don't you move on? Yes, sir. Absolutely. We've made the argument that Rosales-Morales dictates the abandonment of the Lopez rule. The court need not reach that question in this case because this isn't one. We couldn't do that anyway. Okay. Yes, Your Honor. We could shout loudly that we don't like the rule, but we could not follow it if it applied. I believe that's exactly the case. You might like the loud shouting if you think it's a bad rule, but that still wouldn't help you unless the en banc court joins in the shout. I don't. If Lopez applies, which maybe it doesn't, as you've already articulated. Lopez does not apply. The court doesn't need to reach the issue. That's really the point. You don't even need to shout. However, let me talk about the other plenary criteria because Lopez is functionally the state,  So I just want to reassure the court. The other, the actual Olano plenary criteria are satisfied without any serious question in this case. The question as to clarity and obviousness of the error is settled by this court's decision in Torres where we said, you all said, excuse me, that any error that can be identified purely by an uncomplicated resort to the text of the guideline is plain. That's definitively the case here as Your Honors can look and see again on the timeline. I've reproduced the text there. Subsequent to sustain. How did all these people make this mistake if it's so obvious? Probation, the judge, the lawyers, a lot of people. I cannot say, Your Honor. I'm a civil practitioner and I was appointed in this case after the notice of appeal was filed. So I have no real insight into how things occurred that somebody missed this. You don't talk to the trial practitioner? I spoke to the practitioner, but because of the potential for a. Ineffective assistance. Ineffective assistance claim, I didn't feel comfortable relying on what he had to sell. Okay, how about 5G-1? Because that was sort of not raised, sort of raised. Well, it was raised as to the credit for time served. So the retrospective issue of concurrency. It was not raised as to the prospect of going forward issue, I agree. However, at least as to the former of those, the question is, well, actually, let's talk about the merits of the 5G-1.3. Well, let me just ask you this. If we vacate based on the erroneous application of the 2K2.1A4A guideline, we just remand for resentencing. We don't need to retake all the issues, do we? I agree with that, Your Honor, with one caveat. And that is, I've asked the court to make express that the mandate rule, that the court is pre-terminating current consideration of that issue, that the mandate rule would not bar the district court from looking at sentence concurrency under 5G-1. Well, we remand for a full resentencing, that's a full resentencing. We have plenty of case law on that. The only thing is, if we acted kind of like we're only remanding to reconsider the first point, the 2K2.1, then there might be some confusion. But if we say full resentencing, that's a term of art. I take Your Honor's word for that. Again, this isn't my metier, and so I know in the civil context, the mandate rule gives our Western District judges pause very often. Well, I'm glad to hear that they're concerned about following our directions. We're very concerned about following Supreme Court directions. To your point, Judge Barksdale, because 2K2.1 would be a potential disqualifier, as the government argued, for the sentence concurrency issue, the fact, if you were going to reverse on the 2K2.1 plain error, I agree, it would suggest that you need not reach this, as well as the point of saying, if you're going to remand for full resentencing, it's off the table. But I thought that things have changed, well, potentially have changed, to where now the sentence is completed on the state side. Do we know the status of all that? I'm a little confused about that. No, I do not know the status. I apologize. I know that he went back to state custody and is now in federal custody at Three Rivers. So has he completed his state sentence? That is the implication of that, but I would want to investigate that with the probation office and find out from the state authorities precisely what the situation is and whether he has actually completed it or not. Okay. So we don't know that. I apologize, Your Honor. I do not. But again, if we're remanding for full resentencing, it's something that can be explored appropriately on remand at the district court level. Thank you. Anything else? I have more details on the 5G1.7. Well, so there was a little confusion in the district court as to whether it was really finding it to be relevant conduct, because on the one hand, that seemed to be the case in the criminal history, but on the other hand said that didn't have anything to do with the gun. So does that make any difference if we decide to reach the 5G1? That's precisely the point I was just going to mention, Judge Haynes. It does not. The ruling that the district court made below was that the firearm possession was not in connection with the aggravated assault charge. What that means is the firearm did not facilitate. If you look at the words of the 2K2.1B6 and the application defining in connection with there, it's a facilitation requirement. The guns in this case were in the cab, never touched, never brandished, and the district court was right to find that they didn't facilitate the commission of the aggravated assault. That has no bearing on the question of whether that possession conduct was in the same course of conduct, and that's the relevant conduct description for 1B1.3. That's a much broader set of things. And so finding that the guns did not facilitate the aggravated assault does not imply that their possession was not within the same course of conduct, and that's the answer to the relevant conduct. The confirmation there is in the PSR itself, Your Honor. He receives zero criminal history points for the aggravated assault charge under 4A1.2, and if that had no longer been relevant conduct, as the government alleges, he would have received three points. That would have moved him to criminal history Category 6 rather than 5. It didn't. That confirms for us that we still are within the realm of relevant conduct. That's the entirety of the points that I have for the panel. If you have any questions, I'm happy to take them, but if not, I'll give you back your time, Your Honors. All right. You'll have time for rebuttal. Yes, Your Honor. Good morning. Good morning. May it please the Court. Kind of taking the wind out of your sails, haven't we? I'm just old. I apologize if this starts beeping. I don't know why it does, but sometimes it does. I wasn't referring to the device. I was referring to our comments that it's not a fact issue. Thank you for clarifying that. I thought, well. Yes, you did sort of take the wind out of my sails on that. Do you want to put the wind back in? Why is it a fact question when there's simply no dispute about this timeline, whether confusing or helpful? Is there any dispute about any of these dates? Is there any fact for the district? Because the whole notion of Lopez is you need to do some fact finding, you need to raise that with the district court, so the district court can do some fact finding. There's nothing here that's being disputed, is there? No, the timeline is not disputed. I think it correctly reflects what was going on. I think where the confusion came in was that the guideline had recently been amended. Previously it was if any part of the offense occurred and there was a prior conviction or a conviction that happened, even after that conduct, it would have been all right. But then the guideline was amended to say, let me turn in my notes here, the guideline was amended to say that the instant offense was subsequent to sustaining one conviction for a crime of violence, and that would have been evading arrest with a motor vehicle. Also there was a case. So why is that a fact question? Again, we don't have any fact question about when he sustained the conviction. We don't have any fact question about when he committed the instant offense. Sometimes we could. I agree with you. Sometimes we could if it was some long-lasting conspiracy. When did it begin? When did it end? Blah, blah, blah. All of that. Here, none of this is disputed. There would be no facts for the district court to resolve, so I don't really understand how Lopez, even though whether we agree with Lopez or not and we know we have to follow it, it doesn't seem relevant to you, but I respect that you disagree, so I'm trying to understand that disagreement. Well, I believe that what had happened in considering all this, these facts when they're set out on a piece of paper seem very clear. However, because of the length of time involved, the warrants that were issued, I think it was confusing to the probation officer. And the actual, there are cases that say whether or not a date of an offense occurred that that is not a factual issue, as opposing counsel pointed out. But there are others that talk about, and I think they were prior to Rosales-Morales and prior to the amendment in the guideline that applied Lopez to situations like this. Well, again, there could be circumstances where we know a bomb was placed, but we don't know when, and then the bomb went off sometime later. Or maybe the timing there could be a dispute or something, again, a conspiracy, selling drugs for some long period of time, so on and so forth, and the beginning and ending of that, which could make a difference, might be in doubt. But here I'm not seeing that to be the case here. So it's kind of like almost a summary judgment standard of, you know, is there a material fact issue? Well, then we can't grant summary judgment. But if there's not, then even though sometimes things tend to be fact questions, we say they're not here. We do that in summary judgment all the time, where we say, well, normally this would be a fact question, but because of X, it's not. Why doesn't that apply on Lopez? Well, an evading arrest case can be a continuous offense, but whether or not that would circumvent the application of an error that was plain or obvious is, I think, a different question. But certainly as a continuing offense, the offense continues, but that does not directly apply to where the guideline says that the felony I mean that the instant offense must be subsequent to a felony conviction. It's sustaining it. I'm sorry. But whether or not it was plain or obvious, there's also, as opposing counsel Mr. Bates had pointed out in his brief, there was a case still pending that is pertinent here, the United States v. Gooden. And in that case, the court held that the term of prior felony conviction included a conviction that was not sustained until after the defendant committed the instant offense, but prior to sentencing. And as he pointed out, that case had not been overruled. So the language has changed. But the amendment has changed. So whether or not applying the law at the time of the appeal, as we must do, whether or not that that would make this a not plain or obvious error. Our rule of orderliness is we can't one panel can't overrule another panel absent an intervening change in the law. Isn't that what we have here, that the language of the guideline changed? That's an intervening change in the quote law, the guideline being what we're applying. It is an intervening change in the law. Whether or not that makes this error plain or obvious is the question, obviously. And also there are the other criteria, the plain error, whether or not this affected his substantial rights and whether or not the court can exercise it. The fourth prong. Recently this court, I think it was Thursday or Friday of last week, this court in Villarreal Garcia applied the fourth prong of the plain error standard there and found that the error had been plain, but it did not affect the fairness and integrity of the conviction. And they vacated and remanded. I'm sorry, I'm getting my nets confused. But they considered whether or not the fourth prong of the plain error standard was affected by. Well, we're also always supposed to consider the fourth prong, and it's discretionary, but that discretion has been a bit limited by Rosales-Morales. No question. It's still there, and we have even applied it in sentencing cases. However, it's more constrained than perhaps our case law, which was a bit at odds with itself, had before. Yes. And also another case that this court issued last month in Solano Hernandez, they vacated and remanded saying that the sentencing error was plain. So there is that. There is a major change in how we view these cases after Rosales-Morales. Let's operate, just for purposes of your answer to my question, that we do not see a problem in reaching the issue on 2K2, et cetera, that we do find the error to be plain and vacate and remand. What do we need to do if we were to do that on the rest of the case on the 5G issues? I believe that under 5T that the court's determination that the ‑‑ I don't think the court would have to do anything on that if it's just ‑‑ Well, what about the statement by the district judge that this was ‑‑ he didn't say it wasn't relevant conduct, but he did indicate there was no connection and maybe suggesting he would not find this was relevant conduct. Do we need to address that sort of thing one way or the other? I'm sorry. Do we need to address at all whether there's relevant conduct involved here in light of what the judge said in a somewhat different context? If the case is remanded under the 2G guideline, I don't think the court needs to address that, but I think the court certainly could and could certainly find that as the probation officer calculated, the offense was not considered relevant conduct and, therefore, there wasn't any error there. Can you shed any light on the current status of the serving of this sentence? No, Your Honor. I'm sorry. I can't. I do know that in general practice, he wouldn't have been sent to federal detention if his state case were still pending, but whether or not that applied here, I don't know. Go ahead. I don't know. So, ordinarily, sent back to state, finishes the term in state, comes back to federal, and so if he's back in federal, that would imply usually that the state is fully served, but that's the sort of thing, of course, the district court could explore if we do remand. Exactly. And that could change the 5G analysis. It could, yes. Nothing to credit. It's an interesting set of facts. That's true. Does the court have any further questions or any other issues I could address for you? Thank you, ma'am. Thank you. Appreciate it. Thank you, Your Honors. I don't really have any substantial points on rebuttal unless you want to hear about Gooden and the fact that the Sentencing Commission abrogated it by its own action. What you have to factor in is whether you like what you've been hearing from the bench and whether you want to risk saying anything further. I believe, Your Honor, that discretion will be the better part of the vow. So if the court doesn't have any questions, I would yield. That was my time. All right, counsel. I would simply point out to you, Mr. Bates, that as you know, your Rule 28J letter was thrown back at you last Friday. I apologize, Your Honor. I did not see the notice on that. The 28J letter you filed where you cited . . . Arviz Amato and Campo Ramirez. Yes, Your Honor. Yes. And our clerk refused to accept it last Friday. Maybe you hadn't received the notice yet. I haven't received the notice. I apologize. Right. Well, I would just simply remind you that 28J letters are not to re-argue your case. They're just to cite new authority to us and, of course, the authority you cited is from 2010 and 2006. And you just . . . you might want to check that rule again before you file 28J letters. Your Honor, I apologize. It's not that that was new authority. It became newly . . . It came to my attention only during the course of oral argument that there were cases in which this court had considered similar date comparison issues. Right, but that should have been in your original briefing. Yes, Your Honor. You don't get a certain reply. You can always move for leave to file a supplemental brief if that's appropriate. We may or may not grant that, but that's the right vehicle to raise something that you feel like you should have before but didn't, and then we can rule on that. I will say if you discover a case that's directly on point, you've got to let us know about it somehow, but that doesn't allow for re-arguing. That's the piece of it. If you had said, I apologize, I did not find X versus Y before, here it is, that would cause less problems than when you have three pages of argument in what is supposed to be a 28-J. I apologize. At least that's my view of it. I beg the court's leave and apologize for that. I will do that in the future. Thank you, Your Honors. Thank you both. Well, we appreciate you taking the appointment. We appreciate you being here, too. I don't mean to speak for everyone, but I appreciate it.